***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On the relevant dates herein, an employee-employer relationship existed between Plaintiff-Employee and Defendant-Employer.
3. On the relevant dates herein, the carrier liable on the risk was the Kemper Insurance Company.
4. Plaintiff's average weekly wage will be determined by an Industrial Commission Form 22 Wage Chart.
5. Plaintiff sustained an injury on or about 6 July 2002, with the exact date to be determined by the Industrial Commission.
6. The injury arose out of and in the course of Plaintiff's employment with Defendant-Employer and is compensable.
7. At and subsequent to the hearing, the parties submitted a packet of Industrial Commission forms, which was admitted into the record, and marked as Stipulated Exhibit (2), and a packet of medical records, which was admitted into the record, and marked as Stipulated Exhibit (3).
8. The issues to be determined are as follows:
 a. To what, if any, indemnity benefits is Plaintiff entitled subsequent to 31 March 2003;
 b. Whether Plaintiff is entitled to ongoing medical treatment for injuries sustained in the accident arising out of and in the course of her employment with Defendant-Employer;
 c. Whether Plaintiff is entitled to have medical expenses paid for that were incurred as the result of her injury by accident arising out of and in the course of her employment with Defendant-Employer, and;
 d. Whether Plaintiff is entitled to the award of attorney fees pursuant to N.C. Gen. Stat. § 97-88.1
for Defendants' refusal to pay for medical expenses.
 ***********
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, Plaintiff was thirty-two years of age, with her date of birth being 2 August 1971. Plaintiff has a high school education.
2. Plaintiff began her employment with Defendant-Employer in April 2002. Plaintiff was hired as a housekeeper to clean rental homes and was paid according to the number of rooms cleaned. Plaintiff normally cleaned twenty-five to thirty rooms per day. Plaintiff's duties included cleaning kitchens and bathrooms, and making beds. Plaintiff's duties required her to walk, lift, reach, stand, bend and climb stairs.
3. On 6 July 2002, Plaintiff was working with a co-employee cleaning a rental property. As Plaintiff and her co-worker were making a bed, the co-worker pushed on the bed causing it to hit Plaintiff's left foot and ankle. Following this incident, Plaintiff completed her duties and reported its occurrence to her supervisor, Ms. Cindy Moore.
4. The next day, Plaintiff reported to work and completed an accident report. Ms. Moore then directed Plaintiff to report to the emergency room. At Dosher Memorial Hospital, Plaintiff was evaluated and diagnosed as having sustained a sprain and contusion to her left ankle. Plaintiff was instructed to elevate her foot and use ice packs.
5. The compensability of Plaintiff's claim was accepted by Defendants through the filing of an Industrial Commission Form 60. Defendants also directed Plaintiff to Dr. Bryan C. Satterwhite for further treatment.
6. Plaintiff was first examined by Dr. Satterwhite on 8 July 2002. Dr. Satterwhite, a board eligible podiatrist, diagnosed Plaintiff as having posterior tibial tendonitis, which is an inflammation of the tendon and its attachment to the bone, secondary to bone trauma over the accessory navicular in the left foot. Based upon this diagnosis, Dr. Satterwhite assigned Plaintiff restrictions of no prolonged walking or standing. On 24 July 2002, Plaintiff returned to Dr. Satterwhite, at which time he instructed her to begin wearing regular shoes, to ice her left foot and to continue using Naprosyn. Additionally, Dr. Satterwhite released Plaintiff to return to work with no restrictions.
7. On 22 August 2002, Plaintiff again returned to Dr. Satterwhite and reported increased pain with ambulation and standing. Dr. Satterwhite applied a fiberglass below-the-knee cast to Plaintiff's left lower extremity, informed Plaintiff not to bear weight on her left lower extremity for the next four weeks, and allowed Plaintiff to return to light duty work with restrictions of one hundred percent sitting during the shift.
8. Defendant-Employer was unable to accommodate the restrictions assigned by Dr. Satterwhite on 22 August 2002, and filed an Industrial Commission Form 62 on or about 23 August 2002, which reinstated Plaintiff's total disability benefits.
9. On 20 September 2002, Plaintiff returned to Dr. Satterwhite, at which time her cast was removed, and she was given an injection in the area of her posterior tibial tendon. Plaintiff was also advised to wear a fracture walker at all times, and was referred to physical therapy, which she began on 3 October 2002. As of 23 October 2002, Dr. Satterwhite recommended that Plaintiff continue with an additional three weeks of physical therapy, and opined that if there were no improvement, an MRI would be considered. Additionally, Plaintiff was released to return to work with restrictions of no prolonged standing or walking. Defendants were able to accommodate these restrictions.
10. On 7 November 2002, the recommended MRI was performed, revealing marrow edema, likely degenerative in origin, involving the accessory navicular. Based upon the MRI and failure of conservative treatment, Dr. Satterwhite recommended that Plaintiff undergo surgery, which would involve an excision of the accessory navicular with ostectomy of the navicular. This procedure was performed on 3 December 2002. Subsequent to the surgery, Dr. Satterwhite medically excused Plaintiff from work during her period of recovery. Despite the surgery, on 6 January 2003, Plaintiff returned to Dr. Satterwhite with reports of continued pain in her left foot. With these symptoms, Dr. Satterwhite changed casts and released Plaintiff to return to work at a position with that allowed one hundred percent sitting.
11. Defendants assigned Ms. Jane Bullock as a rehabilitation professional to coordinate medical rehabilitation services on Plaintiff's claim. At her deposition, Ms. Bullock testified that she attended all of Plaintiff's medical appointments, although for a few of the appointments, she arrived after Plaintiff had been examined by her physician. At one such appointment on 6 January 2003, Ms. Bullock spoke with Dr. Satterwhite after Plaintiff had departed and without having obtained Plaintiff's permission. Defendants contend that this was an innocent communication caused in part by Plaintiff having arrived early for her appointment, thereby "forcing" Ms. Bullock to speak with Dr. Satterwhite outside of Plaintiff's presence. Following her conversation with Dr. Satterwhite, Ms. Bullock obtained a copy of a 6 January 2003 work note from the receptionist desk that indicated that Plaintiff was unable to return to work. Ms. Bullock then conferred with Dr. Satterwhite's staff outside of Plaintiff's presence and without Plaintiff's permission regarding Plaintiff's ability to return to work. Following this communication, Dr. Satterwhite changed the work note to indicate that Plaintiff could, in fact, return to work so long as she was able to sit one hundred percent of her shift.
12. Immediately after meeting with Dr. Satterwhite, Ms. Bullock sent a letter to Plaintiff notifying her that she talked to Dr. Satterwhite, but the letter did not state Plaintiff failed to arrive at the scheduled appointment time. The letter stated: "I missed you at your appointment on Monday, January 6, 2002 [sic] with Dr. Satterwhite as you were already gone when I arrived. I spoke with Dr. Satterwhite after your appointment, and he advised me that you are now able to return to work as long as you can sit 100% of the day."
13. It is unclear from the evidence whether Plaintiff arrived early, the rehabilitation professional arrived late, or both. If Plaintiff had arrived at a time other than the scheduled appointment time, the rehabilitation professional would be permitted, under Rule VII(D)(7) of the North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims, to meet with the physician without Plaintiff's consent. The documentation provided by Ms. Bullock is insufficient to determine whether her communication with Dr. Satterwhite met the guidelines established under Rule VII(D)(7).
14. Subsequent to Ms. Bullock's 6 January 2003 communication concerning Plaintiff's ability to return to work, Plaintiff was contacted by Defendant-Employer regarding a sitting only position answering phones. The position involved was one hundred percent sitting, including accommodations by Defendant-Employer to drive her around on a golf cart and pick her up on a ferry, so she did not have to walk. This position would require Plaintiff to travel to Bald Head Island to report to work at the same time she was continuing to participate in physical therapy at Dosher Memorial Hospital, which is located off of the island. Due to her belief that Dr. Satterwhite had not released her to return to work, Plaintiff did not accept this position.
15. Plaintiff's confusion about her work restriction was reasonable. Plaintiff was aware, however, by 27 January 2003 that Dr. Satterwhite was of the opinion that she could return to work with restrictions of sitting eighty percent of the shift.
16. Thereafter, on 27 January 2003, Defendants filed an Industrial Commission Form 24 requesting suspension of Plaintiff's total disability benefits until she returned to work. Plaintiff did not file a response to the Form 24. On 26 February 2003, an Administrative Order was filed by Special Deputy Commissioner Elizabeth Maddox finding that Plaintiff had unjustifiably refused suitable employment and suspending Plaintiff's total disability benefits until Plaintiff ceased her unjustified refusal to attempt to return to work.
17. As of 11 March 2003, Plaintiff continued to report to Dr. Satterwhite that she was experiencing problems with her left foot particularly with prolonged standing or walking. Dr. Satterwhite prescribed custom orthotics, but despite her continued symptoms, declared that Plaintiff had reached maximum medical improvement and continued in effect her work restrictions of sitting eighty percent of the time. Additionally, on 8 April 2003, Dr. Satterwhite released Plaintiff to return to full duty work without restrictions.
18. At the hearing, Plaintiff testified that she received a telephone call from Ms. Hillary Saunders Bessette, an employee of Defendant-Carrier, who informed her that her workers' compensation file was being closed. Ms. Saunders corroborated this in her deposition testimony and confirmed that she had been instructed to close her file on 8 April 2003.
19. Subsequent to being informed by Defendant-Carrier that her file was closed, Plaintiff continued to experience problems with her left foot and ankle. Therefore, based upon her belief that her file was closed, Plaintiff reasonably sought medical treatment on her own from her family physician. A physician's assistant at her family physician's office then referred Plaintiff to Dr. Timothy Vogler, a board certified podiatrist. Following his examination of Plaintiff, Dr. Vogler diagnosed her as having neuritis, which is inflammation of the nerves, for which she was prescribed medication. Additionally, Dr. Vogler restricted Plaintiff from work starting on the date of 31 March 2003. Dr. Vogler also opined that he would restrict Plaintiff from driving a standard transmission vehicle due to her left foot-ankle condition.
20. In a correspondence dated 12 September 2003, Dr. Vogler indicated that Plaintiff continued to be unable to return to work. Following a period in which Plaintiff experienced no improvement, a decision was made to attempt to alleviate her symptoms through surgery. On 14 January 2004, Plaintiff underwent surgery to remove hardware, a bone anchor and a tendon anchor. Additionally, during this procedure Dr. Vogler restored the posterior tibial tendon, osteotomized the medial cuneiform and placed a bone graft to restore the architecture of the foot. Plaintiff was restricted from work after this surgery.
21. On 8 June 2004, Dr. Vogler released Plaintiff to return to work with restrictions of no prolonged periods of standing or prolonged periods of pushing and pulling heavy objects. Dr. Vogler has also opined that Plaintiff could not currently return to her duties as a housekeeper with Defendant-Employer.
22. At deposition, Dr. Vogler testified Plaintiff was likely at maximum medical improvement, but he had not assigned her a permanent partial disability rating. Dr. Vogler further agreed that on 6 January 2003, Plaintiff had the physical capability to do a job that was one hundred percent sitting, including accommodations by Defendant-Employer to drive her around on a golf cart and pick her up on a ferry, so she did not have to walk, such as the job offered by Defendants to Plaintiff.
23. On 6 July 2002, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with Defendant-Employer. As the direct and natural result of, and causally related to her 6 July 2002 injury by accident, Plaintiff sustained an injury to her left foot and ankle that eventually required two surgeries.
24. Plaintiff's average weekly wage on the relevant dates was $362.45, which results in a compensation rate of $241.63.
25. The Full Commission finds that the record is insufficient to determine whether the communications by Defendants through Ms. Bullock with Dr. Satterwhite on 6 January 2003, constitute non-consensual and exparte communications, or whether Plaintiff arrived at a time other than her scheduled appointment time. Accordingly, the opinions given by Dr. Satterwhite subsequent to that date are given weight and his deposition is not found to be tainted, and will not be stricken.
26. Based upon the totality of the credible evidence of record, Plaintiff's refusal of the position at Bald Head Island was not reasonable or justified. Accordingly, Plaintiff is not entitled to compensation for the period of 27 January 2003, when a position was offered to her meeting the restrictions imposed by Dr. Satterwhite, until 31 March 2003, when Dr. Vogler restricted Plaintiff from work.
27. Based upon the credible medical evidence of record, particularly the opinions of Dr. Vogler, whose treatment was reasonably required to effect a cure, provide relief or to lessen her period of disability and hereby approved, Plaintiff was unable to earn wages in her former position with Defendant-Employer or in any other employment as the result of her 6 July 2002 injury by accident for the period of 31 March 2003 through 8 June 2004.
28. There is insufficient evidence of disability after 8 June 2004.
29. The evidence establishes that Plaintiff has reached maximum medical improvement, but has not been rated to determine whether she retains any permanent partial impairment rating to her ankle due to his injury.
30. There is insufficient evidence upon which to find that Defendants' defense of this matter was unreasonable or indicative of stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage on the relevant dates was $362.45, which results in a compensation rate of $241.63. N.C. Gen. Stat. § 97-2(5).
2. On 6 July 2002, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6). As the direct and natural result of, and causally related to her 6 July 2002 injury by accident, Plaintiff sustained an injury to her left foot and ankle that eventually required two surgeries. Id.
3. The opinions and deposition testimony given by Dr. Satterwhite subsequent to 6 January 2003, are not stricken from the record, as it has not been proven that Defendants engaged in non-consensual, ex parte
communications through Ms. Bullock with Dr. Satterwhite on 6 January 2003. See North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims, Rule VII(D)(7).
4. Plaintiff's refusal of the position at Bald Head Island was not reasonable or justified, therefore, Defendants' Form 24 application was properly granted and her compensation was justifiably suspended from 27 January 2003, until she was removed from work by Dr. Vogler on 31 March 2003. N.C. Gen. Stat. §§ 97-18.1; 97-32.
5. As the result of her 6 July 2002 injury by accident, Plaintiff was incapable of working in any employment from 31 March 2003 through 8 June 2004, and is entitled to be paid by Defendants total disability compensation at the rate of $241.63 per week for the period of 31 March 2003 through 8 June 2004. N.C. Gen. Stat. § 97-29.
6. The treatment provided by Dr. Vogler for Plaintiff was reasonably required to effect a cure, provide relief or to lessen her period of disability and is hereby approved. Dr. Vogler is approved as Plaintiff's authorized treating physician. N.C. Gen. Stat. § 97-25.
7. The issue of whether Plaintiff has sustained any permanent partial impairment to her ankle or continuing total disability after 8 June 2004, is left open for subsequent determination as there is insufficient evidence from which to find that Plaintiff remained disabled after 8 June 2004. N.C. Gen. Stat. § 97-31.
8. Because there is insufficient evidence upon which to find that Defendants' defense of this matter was unreasonable or indicative of stubborn, unfounded litigiousness, Plaintiff is not entitled to the award of attorney fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall reinstate Plaintiff's total disability compensation at the rate of $241.63 per week from 31 March 2003 through 8 June 2004. This compensation is subject to the attorney fees approved herein.
2. Defendants shall pay for all related medical treatment incurred or to be incurred by Plaintiff as the result of her 6 July 2002 injury by accident, including all treatment provided and recommended by Dr. Vogler, who is approved as her authorized treating physician, when bills for the same are submitted and approved according to procedures approved by the Commission.
3. Twenty-five percent of the compensation awarded Plaintiff in paragraph 1 of this AWARD is approved as a fee for Plaintiff's attorney and shall be deducted and paid directly to Plaintiff's attorney.
4. The issue of whether Plaintiff is entitled to payment for total disability after 8 June 2004, or permanent partial disability, if any, is left open for subsequent determination. Either party may request a hearing on these issues.
5. Defendants shall pay the costs.
This the __ day of October 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ PAMELA T. YOUNG COMMISSIONER